UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| THOMAS & BETTS CORPORATION, *now known as* ABB Installation Products, Inc., <br><br>       Plaintiff and Counterclaim Defendant, <br>   -v- <br><br>TRINITY MEYER UTILITY STRUCTURES, LLC *formerly known as* McKinley 2014 Acquisition, LLC, *now known as* Meyer Utility Structures, LLC, <br><br>       Defendant and Counterclaim Plaintiff, <br>   and <br><br>ARCOSA, INC., <br><br>       Defendant. | 19 Civ. 7829 (PAE) <br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

  In 2014, plaintiff Thomas & Betts Corporation ("T&B") sold its steel structures business to defendant Trinity Meyer Utility Structures, LLC ("Meyer"). The purchase agreement, Dkt. 25 at 12–154 ("Agreement"), included provisions for indemnification between the parties covering a variety of situations. Relevant here, these included warranty claims brought by customers who had purchased equipment from T&B prior to the sale. Following the sale, non-party Electric Transmissions Texas, LLC ("ETT"), brought warranty claims related to electrical transmission towers that had been purchased from T&B in 2011 (the "ETT Warranty Claims"). T&B asserted that such claims, which were ultimately valued at more than $130 million, were Meyer's responsibility under the Agreement's indemnification provisions. Meyer disagreed. Four years later, T&B brought this suit for breach of contract against Meyer and its parent company, Arcosa, Inc. ("Arcosa").

Before the Court is defendants' motion to dismiss T&B's first amended complaint, and T&B's cross-motion to dismiss Meyer's amended counterclaims. For the reasons that follow, the Court grants both motions to dismiss in their entirety.

## I. Background

### A. Facts

#### 1. The Parties

Plaintiff and counterclaim defendant T&B is a Tennessee corporation with its principal place of business in Memphis, TN. Dkt. 25 ("FAC") ¶ 3. Defendant and counterclaim plaintiff Meyer is a Delaware LLC with its principal place of business in Dallas, TX. *Id.* ¶ 4. Defendant Arcosa is Meyer's parent company. Dkt. 40 ("Def. Reply") at 1. Arcosa is a Delaware corporation with its principal place of business in Dallas, TX. FAC ¶ 5.

#### 2. T&B's Claims[1]

In June 2011, "T&B entered into a contract with [non-party ETT] to engineer, fabricate and deliver tubular steel transmission line structures to be used by ETT in constructing [electrical] transmission lines for Texas Competitive Renewable Energy Zones." *Id.* ¶ 8. T&B provided an express warranty for the transmission towers, and "warranted that [they] would be free from defects, and also agreed to replace any defective materials or workmanship." *Id.* ¶ 10.

Three years later, T&B sold its electrical transmission towers business to Meyer. *Id.* at 12. The 143-page purchase agreement included detailed indemnification provisions that anticipated, *inter alia*, warranty claims brought by customers who had purchased products from

---

[1] This account is drawn from the first amended complaint, FAC, and the parties' Agreement, *id.* at 12–154, which is attached to the FAC as an exhibit and therefore properly considered by the Court. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). For the purposes of resolving a motion to dismiss, the Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in T&B's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

T&B prior to the sale. *See generally id.* at 59–66. The Agreement also explicitly excluded from Meyer's assumed liabilities warranty claims that ETT had already brought regarding its 2011 purchase. *Id.* ¶ 14.

According to T&B, in 2015, ETT "asserted additional express warranty claims against T&B and [Meyer]" that T&B alleges "do not relate to or arise from" the claims that were excluded from Meyer's assumed liabilities under the Agreement. *Id.* ¶ 15. T&B alleges that "ETT directly advised [Meyer] of ETT's" new warranty claims, *id.* ¶ 16, which it asserts "are part of [Meyer]'s [a]ssumed [l]iabilities, not subject to any applicable liability exclusions in the [p]urchase Agreement, and were expressly assumed by [Meyer] under the [p]urchase Agreement," *id.* ¶ 18. Although "[i]nitially, T&B and [Meyer] worked together to address ETT's Warranty Claims," *id.* ¶ 20, T&B alleges that Meyer "ultimately wrongfully denied any responsibility for ETT's Warranty Claims, refused to take responsibility for [the] defense of [them], and refused to use commercially reasonable efforts to resolve [them]," *id.* ¶ 21. Meyer maintained this position even after "T&B's Chief Legal Counsel formally notified [Meyer] . . . that ETT's Warranty Claims were [Meyer's] [a]ssumed [l]iabilities under the [p]urchase Agreement." *Id.* ¶ 26. As a result, T&B "was forced to handle the defense and undertake to resolve" ETT's claims "on commercially reasonable terms." *Id.* ¶ 22. While it attempted to engage Meyer in this process, Meyer "denied any responsibility." *Id.* ¶¶ 23–25. T&B was ultimately "forced to seek to resolve ETT's Warranty Claims without [Meyer's] involvement," *id.* ¶ 28, and, in 2017, executed a confidential settlement with ETT, *id.* ¶ 31. Two years later, "T&B again served [Meyer] with formal notice of T&B's indemnity claim." *Id.* ¶ 32. Since that time, "[a]dditional testing and inspections . . . [have] revealed additional defects in the ETT [s]tructures, necessitating the replacement of components of the ETT [s]tructures and resulting in

substantial costs." *Id.* ¶ 34. When Meyer again denied any responsibility for the ETT Warranty Claims, T&B filed this lawsuit. *Id.* ¶¶ 35–38. T&B brings two claims, for breach of contract and a declaratory judgment that Meyer is responsible for the ETT Warranty Claims. *Id.* ¶¶ 39–48.

### 3. Meyer's Counterclaims[2]

Meyer's counterclaims center on two periods of conduct by T&B: before and after the execution of the Agreement between it and T&B.

Meyer alleges that during the negotiations, T&B had a duty to disclose to Meyer, but did not, three agreements it had reached or was negotiating with ETT over the ETT Warranty Claims: the original 2011 agreement in which T&B agreed to produce transmission towers to ETT and warrantied its work (the "2011 Agreement"), ACC ¶¶ 4–6; a February 2014 settlement and release agreement between T&B and ETT (the "February 2014 Agreement"), which was consummated four months before T&B and Meyer executed the sale, *id.* ¶ 11; and a second release and settlement agreement between T&B and ETT (the "September 2014 Agreement"), which Meyer alleges was being negotiated at the same time that T&B and Meyer were negotiating the sale and was signed three months after T&B and Meyer executed the sale, *id.* ¶ 14. Meyer alleges that T&B's concealment of these agreements prevented Meyer from ascertaining the true scope of the ETT Warranty Claims and accounting for them through additional negotiated exclusions to Meyer's assumed liabilities or a different purchase price. *Id.* ¶¶ 16–41, 67–87. Meyer further alleges that T&B made material misrepresentations in the

---

[2] This account is primarily drawn from Meyer's amended counterclaims. Dkt. 54 ("ACC"). On a motion to dismiss, the Court may consider attached exhibits and documents that the ACC incorporates by reference. *See DiFolco*, 622 F.3d at 111. For the purposes of resolving the motion to dismiss Meyer's amended counterclaims, the Court accepts all factual allegations in the amended counterclaims as true, drawing all reasonable inferences in Meyer's favor. *See Koch*, 699 F.3d at 145.

Agreement about the ETT Warranty Claims and the liabilities that Meyer was assuming through the sale. *Id.*

Meyer also alleges that after the sale, T&B repeatedly assured Meyer that Meyer would not be responsible for the ETT Warranty Claims, *id.* ¶¶ 49, 51, and induced Meyer to provide T&B "with ongoing technical assistance, support, and consultation related to testing on the structures," *id.* ¶ 49; *see generally id.* ¶¶ 43–53. At T&B's request, Meyer also "designed . . . a three-piece welded arm bracket" for ETT. *Id.* ¶ 47. Meyer alleges that T&B deceived, misled, and induced it to take such actions for its own benefit, all the while planning to later insist that the ETT Warranty Claims were Meyer's responsibility. *Id.* ¶¶ 54–55, 88–96. Meyer alleges that it would never have acted in the manner it did had it known that T&B would later claim that Meyer was liable for the ETT Warranty Claims. *Id.*

Meyer alleges that T&B's conduct gives rise to six causes of action: intentional fraud, *id.* ¶¶ 67–97; negligent misrepresentation, *id.* ¶¶ 98–109; equitable estoppel, *id.* ¶¶ 110–15; promissory estoppel, *id.* ¶¶ 116–20; breach of contract, *id.* ¶¶ 121–31; and breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 132–43.

### B. Procedural History

#### 1. T&B's Complaint

On August 20, 2019, defendants removed this case from New York Supreme Court, New York County. Dkt. 1. On September 20, 2019, T&B filed its first amended complaint. FAC. On September 25, 2019, defendants filed their motion to dismiss the FAC, Dkt. 27, a supporting memorandum of law, Dkt. 28 ("Def. Mem."), and the declaration of Christine Demana, Esq., Dkt. 29 ("Demana Decl."), with attached exhibits. On October 9, 2019, T&B filed its opposition, Dkt. 37 ("Pl. Opp'n"), and the declaration of Peter Silverman, Esq., Dkt. 38

("Silverman Decl."), with attached exhibits. On October 28, 2019, defendants filed their reply. Def. Reply.

### 2. Meyer's Counterclaims

On December 23, 2019, Meyer filed its amended counterclaims against T&B. ACC. On January 16, 2020, T&B filed its motion to dismiss the ACC, Dkt. 60, a supporting memorandum of law, Dkt. 61 ("Pl. Mem."), and the declaration of Peter Silverman, Esq., Dkt. 62 ("Second Silverman Decl."), with attached exhibits. On January 30, 2020, Meyer filed its opposition, Dkt. 70 ("Def. Opp'n") and the declaration of Christine Demana, Esq., Dkt. 71 ("Second Demana Decl."). On February 4, 2020, T&B filed its reply. Dkt. 74 ("Pl. Reply").

## II.  Applicable Legal Standards

### A.  Standards Governing Motions Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

These principles equally apply to a defendant's counterclaim.  *See Partner Reins. Co. Ltd. v. RPM Mortg., Inc.*, No. 18 Civ. 5831 (PAE), 2019 WL 3802235, at *5 (S.D.N.Y. Aug. 13, 2019).

### B. Standards Governing Contract Interpretation

"Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." *Kamfar v. New World Rest. Grp., Inc.*, 347 F. Supp. 2d 38, 48–49 (S.D.N.Y. 2004) (citing *805 Third Ave. Co. v. M.W. Realty Assocs.*, 58 N.Y.2d 447, 451 (1983)). At the motion to dismiss stage, the Court may "resolve issues of contract interpretation when the contract is properly before the Court[.]" *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010).  In so doing, the Court "is not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement." *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) (internal quotation marks omitted).  "However, the Court should construe a contract as a matter of law only if the contract is unambiguous on its face." *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 583–84 (S.D.N.Y. 2019). "Contract language is [unambiguous] if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Serdarevic*, 760 F. Supp. 2d at 329 (alteration omitted) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)). "[T]he mere fact that the parties disagree on the proper interpretation of the contract does not render the contractual language ambiguous." *Walker v. Thompson*, 404 F. Supp. 3d 819, 823 (S.D.N.Y. 2019) (citing *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)).

Here, the parties' Agreement was attached to the FAC as an exhibit and is properly before the Court.  Neither party argues that any of the relevant provisions are ambiguous.  The Court agrees.  The Court will therefore interpret the Agreement as a matter of law in resolving the cross-motions to dismiss.

**III.    Defendants' Motion to Dismiss T&B's Amended Complaint**

The Court begins by considering defendants' motion to dismiss T&B's claim for breach of contract. The Court then considers defendants' bid to dismiss T&B's claim for a declaratory judgment. Finally, the Court resolves defendants' motion to dismiss Arcosa as a party.

**A.    T&B's Claim for Breach of Contract**

Meyer moves to dismiss T&B's breach of contract claim as precluded by the terms of the Agreement. In support, Meyer points to Article VI of the Agreement, which it argues governs the indemnification situation at issue here. Based on the terms of Article VI, and especially its notice provisions for indemnification claims, Meyer argues that T&B has not, and cannot, plead sufficient facts to make out a *prima facie* case that Meyer breached the Agreement.

T&B raises three arguments in opposition. First, it argues that Schedule 6.1A of the Agreement, not the indemnification provisions of Article VI, govern its claims against Meyer. Second, it argues that even if Article VI—and specifically the claim notification procedures found in § 6.3 of that Article—applies, T&B "meaningfully complied" with § 6.3(a). Third, T&B argues that in any event, it complied with the requirements of § 6.3(b). The Court addresses these arguments in turn.

**1.    Article VI Governs**

The Court begins by determining the applicable indemnification provision in the Agreement. T&B argues that Schedule 6.1A of the Agreement, also referred to as the "Special Indemnification Matter," controls, while Meyer argues that the indemnification T&B seeks is necessarily pursuant to Article VI.

The unambiguous language of the Agreement supports Meyer's position.

Article VI contains the parties' primary agreements regarding indemnification. Three sections are relevant here. Section 6.1 provides for "Indemnification by Seller 1," *i.e.*, T&B.

8

Section 6.2 provides for "Indemnification by Buyer," *i.e.*, Meyer. And § 6.3 details the "Procedure for Third-Party Claims" (in § 6.3(a)) and the "Procedure for Claims for Indemnification" (in § 6.3(b)), both of which contain provisions about notice by the indemnified to the indemnifier. The Agreement separately includes a Schedule 6.1A, which details "Seller 1's indemnification obligations with respect to" the "Special Indemnification Matter." *See* Agreement Schedule 6.1A(1). As defined in Schedule 11.1, the Special Indemnification Matter refers to "any breach of an express product warranty made in respect of any product, good, component or other item manufactured and sold by Seller 1 [T&B] prior to the Closing Date." *Id.* Schedule 11.1. Schedule 6.1A(3) provides that the claims procedure in that schedule, "rather than Section 6.3(a), shall govern with respect to [indemnification claims under] the Special Indemnification Matter." *Id.* Schedule 6.1A(3).

T&B argues that because it seeks indemnification for a warranty claim for a "product, good, component, or other item manufactured and sold by Seller 1 prior to the Closing Date," *see id.* Schedule 11.1, the claims procedure of Schedule 6.1A—and particularly its notice requirements—govern this dispute. But as Meyer rightly points out, Schedule 6.1A applies to "*Seller 1's* indemnification obligations"—that is, T&B's obligations *to Meyer*, not the other way around. *Id.* (emphasis added); *see also id.* Schedule 6.1A(2) ("Seller 1 shall not be liable for any Damages under Section 6.1(d) unless and until . . . ."). Thus, Schedule 6.1A(3) states that:

> In respect of the Special Indemnification Matter, Buyer [Meyer] shall use commercially reasonable efforts to resolve all claims for breach of an express product warranty in a commercially reasonable manner and shall use commercially reasonable efforts to notify Seller 1 [T&B] reasonably promptly, and in any event not more than 30 days after becoming aware of any claim for breach of an express product warranty or, if earlier, upon the assertion of any such claim by delivering a Special Indemnification Matter Notice with respect thereto. No delay on the part of Buyer [Meyer] in notifying Seller l [T&B] *shall relieve Seller 1 [T&B] from any obligation hereunder* unless (and then solely to the extent) Seller 1 [T&B] is thereby prejudiced . . . .

9

*Id.* Schedule 6.1A(3) (emphasis added). Consistent with the plain text of Schedule 6.1A, the Special Indemnification matter is referenced in Article VI under § 6.1, "Indemnification *by Seller 1* [T&B]":

> Subject to the terms and conditions of this Article VI, from and after the Closing, *Seller 1* [*T&B*] *shall defend, indemnify and hold harmless Buyer* [*Meyer*] . . . from and against Damages sustained, incurred or paid by a Buyer Party [Meyer] directly or indirectly arising from or in connection with: . . . (d) the Special Indemnification Matter; . . . .

*Id.* § 6.1 (emphasis added). The Court therefore agrees with Meyer that, under the unambiguous language of the Agreement, the special claims procedure in Schedule 6.1A is inapplicable to indemnification claims brought by T&B against Meyer, including the one at issue in this lawsuit.

### 2.     T&B's Compliance with Article VI

Having found that Article VI of the Agreement governs T&B's claim, the Court next considers whether the factual allegations in T&B's FAC, if true, plead compliance with Article VI such that T&B has pled a *prima facie* case of breach of contract by Meyer.

Section 6.2 of the Agreement discusses "Indemnification *by Buyer* [Meyer]," which the Court finds is the section applicable to T&B's claim for indemnification. *See id.* § 6.2 (emphasis added). It provides, in relevant part, that:

> Subject to the terms and conditions of this Article VI, from and after the Closing, Buyer [Meyer] shall defend, indemnify and hold harmless each Seller [T&B] . . . from and against Damages sustained, incurred or paid by a Seller Party [T&B] directly or indirectly arising from or in connection with: . . . (c) any Assumed Liabilities, subject to the Buyer Parties' [Meyer's] indemnification rights under Sections 6.1(d) [the Special Indemnification Matter] and 6.1(e); . . . .

*Id.* § 6.2. The text of the Agreement clearly provides that Meyer's indemnification obligations to T&B are "subject to the terms and conditions of this Article VI." *Id.* By the plain meaning of the Agreement, this includes both § 6.3(a), the "Procedure for Third-Party Claims," and § 6.3(b), the "Procedure for Claims for Indemnification." The Court considers each provision in turn.

10

     *a.*  *Section 6.3(a)*

Section 6.3(a) states that "[e]xcept as provided in Section 7.4(b) (relating to certain Tax matters) and in Schedule 6.1A, all claims for indemnification made under this Agreement resulting from, related to or arising out of a third-party claim against an Indemnified Party shall be made in accordance with the following procedures." *Id.* § 6.3(a). Meyer argues that T&B failed to comply with multiple provisions of § 6.3(a). To find for Meyer, the Court need only address the first of these alleged deficiencies: T&B's failure to deliver a "Claim Notice" that met the requirements of the Agreement.

Section 6.3(a) requires that "[a]n Indemnified Party shall notify the Indemnifying Party promptly . . . by delivering a Claim Notice with respect thereto." *Id.* "Claim Notice" is defined in Article XI as:

> a written notice signed by an officer of the Indemnified Party which contains (a) a statement that the Indemnified Party has sustained or is reasonably likely, as determined by the Indemnified Party in good faith, to sustain (including as a result of a third party Claim) Damages that are indemnifiable under Article VI and a reasonable explanation of the basis therefor, including the Section whose breach or purported breach gives rise to such claim for Damages, (b) a reasonably specific description of and the amount of Damages that have been sustained by the Indemnified Party, if quantifiable at the time of delivery of the Claim Notice, and if not so quantified, a reasonable estimate thereof to the extent possible, (c) a demand for payment in the amount of the Damages and (d) if applicable, copies of all relevant documentation (including any summons, complaint, pleading, written demand or other available document or instrument).

*Id.* Article XI.

Meyer claims that T&B fails to adequately plead that it delivered a Claim Notice to Meyer. The Court agrees. The FAC makes two allegations regarding T&B's notice to Meyer. First, it alleges that:

> In August 2016, T&B's Chief Legal Counsel formally notified [Meyer], both orally and in writing, that ETT's Warranty Claims were [Meyer]'s Assumed Liabilities under the Purchase Agreement, and that T&B and ETT were engaged in settlement discussions. T&B requested that [Meyer] participate in settlement

> discussions with ETT and proposed that a draft settlement agreement be sent to [Meyer] for its review and comment[.]

FAC ¶ 26. Second, it alleges that, after executing a settlement agreement with ETT two years prior, *id.* ¶ 31:

> On or about March 15, 2019, T&B again served [Meyer] with formal notice of T&B's indemnity claim (*collectively with prior notice, "Claim Notice"*), in accordance with the Purchase Agreement. In the Claim Notice, [Meyer] was again advised in writing by T&B's Chief Legal Counsel of ETT's Warranty Claims, the basis for indemnification under the Purchase Agreement, and the estimated range of potential damages arising from ETT's Warranty Claims and the confidential settlement agreement with ETT[.]

*Id.* ¶ 32 (emphasis added). Neither of these allegations, if true, meets the Agreement's detailed definition of a Claim Notice. *See* Agreement Article XI. Nor do either of T&B's letters to Meyer, both of which are incorporated by reference into the FAC and attached to the Silverman Declaration, satisfy the requirements of a Claim Notice. *See* Silverman Decl. at 146–47, 149–51.

T&B, tellingly, does not argue that it fully complied with the Claim Notice requirements of § 6.3(a).[3] Instead, it argues that if the Court finds—as it has—that Schedule 6.1A does not govern this case, it nevertheless "meaningfully complied" with § 6.3(a), which T&B claims is all the Agreement requires. Pl. Opp'n at 14. Meyer responds that compliance with the entirety of Article VI, including § 6.3(a), is an express condition precedent to its indemnification obligations such that substantial compliance is insufficient.

---

[3] Nor could it. T&B's March 2019 letter to Meyer explicitly took the contrary position: that the notice requirements of Schedule 6.1A apply to this dispute. *See* Silverman Decl. at 150. This same theory undergirds the FAC. *Compare* FAC ¶ 19 ("The Purchase Agreement required [Meyer] to provide notice to T&B of ETT's Warranty Claims and for [Meyer] to use commercially reasonable efforts to resolve ETT's Warranty Claims."), *with* Agreement Schedule 6.1A(3) ("In respect of the Special Indemnification Matter, Buyer [Meyer] shall use commercially reasonable efforts to resolve all claims for breach of an express product warranty in a commercially reasonable manner and shall use commercially reasonable efforts to notify Seller 1 [T&B] reasonably promptly, and in any event not more than 30 days after becoming aware of any claim for breach of an express product warranty.")

The Court again agrees with Meyer. As noted, Meyer's indemnification obligations are contained in § 6.2, which states: "[s]ubject to the terms and conditions of this Article VI, from and after the Closing, [Meyer] shall defend, indemnify and hold harmless [T&B] . . . ." Agreement § 6.2. "Under New York law, a court will not ordinarily construe a contractual duty as a condition precedent 'absent clear language showing that the parties intended to make it a condition.'" *CIH Int'l Holdings, LLC v. BT U.S., LLC*, 821 F. Supp. 2d 604, 610 (S.D.N.Y. 2011) (quoting *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 581 (1992)). As T&B acknowledges, however, "specific, talismanic words are not required," so long as "conditions precedent [are] expressed in unmistakable language." *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (internal quotation marks omitted). The language of § 6.2 easily meets this standard: "Linguistic conventions of condition—such as if, on condition that, provided that, in the event that, and *subject to*—can make plain a condition precedent." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) (internal quotation marks and alterations omitted) (emphasis added). That, as T&B argues, § 6.3(a) does not itself include a condition precedent is of no moment. Section 6.2 unambiguously conditions Meyer's indemnification obligation on compliance with "the terms and conditions of this Article VI" in its entirety.

Because compliance with the provisions of Article VI is a condition precedent, T&B's argument of "meaningful compliance" with the claim notice requirements of § 6.3(a) is unavailing. *See, e.g.*, *Sohm*, 959 F.3d at 46 ("A condition precedent . . . is 'an act or event which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,

86 N.Y.2d 685, 690 (1995) (alterations omitted))). T&B was required to strictly comply with the requirements of, *inter alia*, § 6.3(a). It concedes that it did not do so.[4]

### b. Section 6.3(b)

Finally, T&B argues that "[r]egardless of [w]hether Schedule 6.1A or Section 6.3(a) applies," it complied with the provisions of § 6.3(b). Pl. Opp'n at 20. This argument fails for at least two independent reasons. First, for the same reasons that T&B's notice to Meyer did not meet the definition of a Claim Notice as required by § 6.3(a), its notice also failed to satisfy § 6.3(b)'s requirement that "[a]n Indemnified Party wishing to assert a claim for indemnification under this Article VI shall deliver to the Indemnifying Party a Claim Notice." Agreement § 6.3(b). Second, as discussed *supra*, pursuant to the condition precedent in § 6.2, any indemnification by Meyer is "[s]ubject to the terms and conditions of this Article VI"—that is, all of Article VI. *Id.* § 6.2. Having found that T&B failed to satisfy the conditions of § 6.3(a), whether T&B satisfied § 6.3(b), which in any event it did not, is irrelevant.

Because T&B did not satisfy the terms of Article VI of the Agreement, it has not, and cannot, plead sufficient facts to make out a prima facie case of breach of contract by Meyer. That claim is dismissed with prejudice.

### B. T&B's Claim for a Declaratory Judgment

T&B's second claim seeks a declaratory judgment that "[p]ursuant to the Purchase Agreement . . . [Meyer] must indemnify and hold T&B harmless from amounts that will be incurred by T&B for ETT's Warranty Claims, including, but not limited to, under the 2017

---

[4] Having found that T&B's notice to Meyer was insufficient under the terms of § 6.3(a), the Court need not address Meyer's additional arguments that T&B's notice was untimely and that T&B violated the terms of § 6.3(a) by settling ETT's claims in 2017 without Meyer's written consent.

Settlement." FAC ¶ 48. Having dismissed T&B's claim for breach of contract, this claim must necessarily also be dismissed.

The Declaratory Judgment Act provides federal courts with jurisdiction over cases of "actual controversy." 28 U.S.C. § 2201(a). The Act does not provide an independent cause of action; instead, "[i]ts operation is procedural only—to provide a form of relief previously unavailable." *Johnson v. Magnolia Pictures LLC*, No. 18 Civ. 9337 (VB), 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 247 F.R.D. 420, 422–23 (S.D.N.Y. 2007)). "A party seeking a declaratory judgment must thus provide a substantive claim to relief based on a law other than the Declaratory Judgment Act." *Hello I Am Elliot, Inc. v. Sine*, No. 19 Civ. 6905 (PAE), 2020 WL 3619505, at *11 (S.D.N.Y. July 2, 2020). Because the Court has dismissed T&B's sole "substantive claim to relief based on" breach of contract, *id.*, T&B's claim for a declaratory judgment also fails.

T&B's claim for a declaratory judgment is therefore also dismissed with prejudice.

### C. T&B's Claims Against Arcosa

Finally, the Court considers Meyer's motion to dismiss Arcosa as a defendant. This motion is easily granted. T&B added Arcosa as a defendant "[t]o the extent that Arcosa is jointly and severally responsible to indemnify and hold T&B harmless[.]" FAC ¶ 5. The Court need not address the parties' arguments about the extent to which this is the case. Having dismissed T&B's claims against Meyer, the Court likewise dismisses, with prejudice, T&B's identical claims against Arcosa for the same reasons.

## IV. T&B's Motion to Dismiss Meyer's Amended Counterclaims

Meyer brings six counterclaims against T&B. Finding that each is premised on T&B's claim that Meyer is liable for the ETT Warranty Claims—which the Court has now dismissed—the Court concludes that Meyer's counterclaims must also be dismissed.

15

### A. Meyer's Counterclaims for Intentional Fraud, Negligent Misrepresentation, Equitable Estoppel, and Promissory Estoppel

Meyer's first four counterclaims are based on the same facts. Meyer alleges these in detail in its counterclaim for intentional fraud, and incorporates them by reference in its counterclaims for negligent misrepresentation, equitable estoppel, and promissory estoppel. *See* ACC ¶¶ 67–96, 98, 110, 116. The Court considers these counterclaims together.

In its counterclaim for intentional fraud, Meyer first alleges that T&B committed fraud before the consummation of the Agreement by failing to disclose what T&B now claims is Meyer's liability for the ETT Warranty Claims. Meyer claims damages based on its inability to negotiate a fair purchase price in light of T&B's allegedly fraudulent concealment of this information. *Id.* ¶ 86. Meyer also alleges that T&B intentionally committed fraud after the Agreement was signed. Meyer alleges that in reliance on T&B's explicit post-Agreement representations regarding the extent of Meyer's liability for the ETT Warranty Claims, Meyer, *inter alia*, "provided substantial assistance to T&B by consulting on engineering tests and designing a three-piece welded arm bracket for ETT" and "provided components of electrical transmission towers to ETT without charge at T&B's request for a 'customer accommodation.'" *Id.* ¶ 91. Meyer alleges that it was damaged when it "reasonably relied on T&B's representations and omissions to its detriment in providing assistance and product to T&B. T&B knew Meyer was providing this assistance on the basis that T&B told Meyer that it [T&B] was responsible for and would take care of any liability to ETT." *Id.* ¶ 93.

Meyer's second counterclaim, for negligent misrepresentation, alleges that "[t]o the extent that T&B did not intentionally defraud Meyer, it failed to exercise reasonable care or competence in disclosing T&B's dealings with and potential liability to ETT." *Id.* ¶ 102. Meyer alleges similar damages as in its intentional fraud claim, "including that Meyer was deprived of

its ability to fairly negotiate a purchase price for the Assets in the [Agreement] with full information about the potential litigation and liability risks of those Assets," *id.* ¶ 108, and that its post-Agreement conduct would have been different had it not relied on T&B's allegedly fraudulently representations, *id.* ¶¶ 104–07.

Meyer's third counterclaim, for equitable estoppel, alleges that "[h]ad Meyer known about T&B's secret plan to later seek indemnity from Meyer, Meyer would have dealt with T&B in a completely different manner." *Id.* ¶ 114. Meyer alleges that "T&B is estopped from now seeking indemnity from Meyer" for the ETT Warranty Claims. *Id.* ¶ 115.

Meyer's fourth counterclaim, for promissory estoppel, alleges that "T&B promised Meyer that T&B would take care of the ETT claims as its own responsibility, indicating that the claims were separate from and outside of the terms of the [Agreement]," *id.* ¶ 117, and that "[i]n reliance on T&B's promise, Meyer, among other things, provided substantial assistance to T&B by consulting on engineering tests and designing a three-piece welded arm bracket for ETT. Meyer also provided some components of electrical transmission towers to ETT without charge at T&B's request for a 'customer accommodation,'" *id.* ¶ 119. Meyer alleges that, "had [it] known" that T&B would later allege that it was responsible for the ETT Warranty Claims, "it would have dealt with T&B in a completely different manner," *id.*, and that it was damaged by its reliance on T&B's alleged promises, *id.* ¶ 120.

At bottom, these four counterclaims are premised on two core allegations: first, that if Meyer had known it would be responsible for the ETT Warranty claims, it would have negotiated a different (and presumably lower) sales price, *see id.* ¶¶ 86, 108; and second, that if Meyer had known it would be responsible for the ETT Warranty Claims, it would have made different choices in its dealings with T&B after the sale, *see id.* ¶¶ 93–96, 104–07, 114, 119. The

Court, however, has now dismissed T&B's indemnification claims with prejudice. Having determined that Meyer is not, in fact, liable for the ETT Warranty Claims, the premise for each of Meyer's first four counterclaims no longer exists. These four counterclaims are therefore dismissed with prejudice.

### B. Meyer's Counterclaim for Breach of Contract

Meyer's fifth counterclaim alleges that T&B breached several representations and warranties it made in the Agreement relating to the ETT Warranty Claims. *Id.* ¶¶ 121–29. Meyer alleges that it has "has suffered damages, including benefit-of-the-bargain damages, as a direct and proximate result of T&B's breach . . . including that Meyer was deprived of its ability to fairly negotiate a purchase price for the [a]ssets in the [Agreement] with full information about the potential litigation and liability risks of those [a]ssets." *Id.* ¶ 130.

To make out a *prima facie* case of breach of contract under New York law, Meyer must plead sufficient facts to allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted); *Belle Lighting LLC v. Artisan Constr. Partners LLC*, 116 N.Y.S.3d 31, 32–33 (1st Dep't 2019) ("[T]o make a prima facie case on its breach of contract claim, plaintiff had to demonstrate the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." (internal quotation marks omitted)).

In light of the Court's dismissal of T&B's claims for indemnification from Meyer, Meyer has no longer pled damages from T&B's alleged breaches of contract. Meyer's counterclaim for breach of contract is therefore dismissed with prejudice.

### C. Meyer's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Meyer's sixth and final counterclaim alleges that T&B breached the implied covenant of good faith and fair dealing by "misleading and mistreating Meyer in relation to" the ETT Warranty Claims; by "induc[ing] Meyer's assistance and exploit[ing] its expertise to protect T&B's commercial relationship with ETT" in the period between the signing of the Agreement and informing Meyer that the ETT Warranty Claims were Meyer's responsibility; and "by unilaterally and unreasonably trying to expand the alleged [a]ssumed [l]iabilities in a manner calculated to circumvent the . . . [contractual] provisions that Meyer specifically negotiated for its protection."  ACC ¶ 142.

To the extent this counterclaim tracks Meyer's breach of contract counterclaim, it is moot.  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388–89 (1987)).

To the extent Meyer seeks to capture T&B's post-agreement conduct, including "ask[ing] Meyer to provide T&B with ongoing technical assistance, support, and consultation related to testing on the structures," for which T&B "agreed to reimburse Meyer its expenses," ACC ¶ 137, Meyer's sixth counterclaim—like its first through fourth—is premised on the allegation that it would not have acted as it did had it known that T&B would later claim that Meyer was responsible for the ETT Warranty Claims.  With the Court having dismissed T&B's indemnification claims, however, this premise disappears.  As Meyer has not pled any other damages for this counterclaim, it, too, is dismissed with prejudice.

19

**CONCLUSION**

For the reasons stated above, the Court grants Meyer's motion to dismiss the FAC, and also grants T&B's motion to dismiss Meyer's amended counterclaims. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 27, 44, and 60, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 30, 2020
　　　　New York, New York